UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LANCE GRAVES, on behalf of W.G., a minor,

                    Plaintiff,              1:14-CV-0378
                                                       (GTS)
v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

                    Defendant.
_____

APPEARANCES:                                              OF COUNSEL:

MARY M. WITHINGTON                        MARY M. WITHINGTON, ESQ.
  Counsel for Plaintiff
Legal Aid Society of Northeaster NY
112 Spring Street, Ste. 109
Saratoga Springs, NY 12866

U.S. SOCIAL SECURITY ADMIN.             BENIL ABRAHAM, ESQ.
OFFICE OF REG'L GEN. COUNSEL-REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      Currently before the Court, in this Social Security action filed by Lance Graves on behalf of his minor son, W.G. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 11, 12.) For the reasons set forth below, Defendant's motion is granted, and Plaintiff's motion is denied.

I.     RELEVANT BACKGROUND

   A.     Factual Background

Plaintiff was born on October 31, 2006. (T. 89) At the time of his hearing, he was a preschooler. (T. 30.) Plaintiff's alleged disability consists of eczema, speech delays, developmental delays and "leg problems." (T.121.)

   B.     Procedural History

On April 19, 2011, Plaintiff applied for Supplemental Security Income on W.G.'s behalf. (T. 96.) Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On June 15, 2012, Plaintiff appeared before ALJ Robert Wright. (T. 44-62.) On June 25, 2012, ALJ Wright issued a written decision finding W.G. not disabled under the Social Security Act. (T. 24-43.) On February 1, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

   C.     The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law. First, the ALJ found that W.G. was a "preschooler" at the time of filing and a "preschooler" at the time of the hearing pursuant to 20 C.F.R. § 416.926a(g)(2). (T. 30.) Second, the ALJ found that W.G. had not engaged in substantial gainful activity since the application date. (*Id.*) Third, the ALJ found that W.G. suffered from the severe impairments of borderline intellectual functioning, speech and language delays, and developmental delays pursuant to 20 C.F.R. § 416.924(c). (*Id.*) The ALJ determined that W.G.'s eczema and "leg problems" were not severe. (*Id.*)

Fourth, the ALJ found W.G. did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I ("the Listings").  (T. 30-31.)  Fifth, the ALJ found W.G. did not have an impairment or combination of impairments that functionally equals an impairment set forth in the Listings.  (T. 31-39.)  Sixth, and finally, the ALJ concluded W.G. has not been disabled, as defined by the Social Security Act, since April 19, 2011, the date his application was filed.  (T. 39.)

## II.    THE PARTIES' BRIEFINGS

### A.    Plaintiff's Arguments

Generally, in support of his motion for judgment on the pleadings, Plaintiff makes two arguments.  First, Plaintiff argues the ALJ committed reversible error in failing to find Plaintiff had a marked impairment in the domains of acquiring and using language; attending and completing tasks; interacting and relating with others; moving and manipulating objects; and caring for himself. (Dkt. No. 11 at 14-18 [Pl.'s Mem. of Law].) Second, Plaintiff argues the decision of the ALJ is against substantial weight of the evidence and is incorrect as a matter of law. (*Id.* at 18-22 [Pl.'s Mem. of Law].) Specifically, the Plaintiff argues the ALJ ignored evidence in the record and the ALJ failed to consider Plaintiff's testimony. (*Id.* at 20, 21 [Pl.'s Mem. of Law].)

### B.    Defendant's Argument

Generally, in support of her cross-motion for judgment on the pleadings, Defendant makes one argument. Defendant argues the substantial evidence supports the ALJ's decision in each of the domain categories. (Dkt. No. 12 at 2-12 [Def.'s Mem. of Law].)

## III. RELEVANT LEGAL STANDARD

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *see Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. *See* 20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, 02-CV-3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(b); *Kittles*,

5

245 F. Supp. 2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. See 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step of the test next requires examination of whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. See 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. In essence, "a child is [disabled under the Social Security Act] if his impairment is as severe as one that would prevent an adult from working." *Zebley v. Sullivan*, 493 U.S. 521, 529, 110 S. Ct. 885, 890 (1990).

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether it meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). *Id.* Equivalence to a listing can be either medical or functional. See 20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. See 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

Analysis of functionality is informed by consideration of how a claimant functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1).

Those domains include: (i) [a]cquiring and using information; (ii) [a]ttending and completing tasks; (iii) [i]nteracting and relating with others; (iv) [m]oving about and manipulating objects; (v) [c]aring for [oneself]; and (vi) [h]ealth and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

## IV. ANALYSIS

### A. Whether Substantial Evidence Supports the ALJ's Determination that the Plaintiff Did Not Have an Impairment or Combination of Impairments that Functionally Equaled the Listing

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons set forth in Defendant's memorandum of law. (Dkt.

No. 12 at 5-7 [Def.'s Mem. of Law].) The Court adds the following analysis. For the ease of analysis, we will address each domain in which the Plaintiff asserts the ALJ's decision is not supported by substantial evidence.

### 1. Acquiring and Using Information

The ALJ determined Plaintiff had a "less than marked limitation" in this domain. (T. 34.) Plaintiff argues the ALJ erred in his determination finding Plaintiff's speech and language delays did not cause "marked" limitation in the domain of acquiring and using information. Plaintiff asserts the ALJ failed to take into consideration testing results, Plaintiff's learning environment, and Plaintiff's IQ. (Dkt. No. 11 at 15-16 [Pl.'s Mem. of Law].)

> For children W.G.'s age, the Regulations provide:
>
> When [the plaintiff is] old enough to go to preschool or kindergarten, [he] should begin to learn and use the skills that will help [him] to read and write and do arithmetic when [he] are older. For example, listening to stories, rhyming words, and matching letters are skills needed for learning to read. Counting, sorting shapes, and building with blocks are skills needed to learn math. Painting, coloring, copying shapes, and using scissors are some of the skills needed in learning to write. Using words to ask questions, give answers, follow directions, describe things, explain what [he] mean[s], and tell stories allows [him] to acquire and share knowledge and experience of the world around [him]. All of these are called "readiness skills," and [he] should have them by the time [he] begin[s] first grade.

20 C.F.R. § 416.926a(g)(2)(iii).

On February 15, 2011, Plaintiff underwent a preschool developmental evaluation conducted by John C. Braico, M.D. Dr. Braico administered the Preschool Language Scale-4 ("PLS-4") test. (T. 318.) Plaintiff scored 61 in the auditory comprehension portion, which was -2.75 standard deviations from the norm. (*Id.*) Plaintiff scored 64 in the expressive communication portion, which was -2.5 standard deviations from the

8

norm. (*Id.*) Dr. Braico opined Plaintiff had a "severe articulation disorder and a severe receptive and expressive language delay." (T. 326.) Dr. Braico also administered cognitive testing. Plaintiff had a full scale IQ score of 75 which indicated borderline cognitive ability. (T. 322.)

Elizabeth Lahan completed a teacher questionnaire in June of 2011. (T. 131-138.) In the area of acquiring and using information, she observed Plaintiff had a "very serious problem" providing organized oral explanations and adequate descriptions. (T. 132.) She observed Plaintiff had an "obvious problem" understanding and participating in class discussions. (*Id.*) She specifically noted Plaintiff needed directions repeated and had challenges expressing his needs. (*Id.*) However, Ms. Lahan also opined that W.G. had only a "slight problem" comprehending oral instructions; understanding school and content vocabulary; learning new material; and, recalling and applying previously learned material. (*Id.*)

A student progress report completed by Plaintiff's speech therapist in June 2011, indicated Plaintiff was able to follow one and two-step directions; comprehended concepts such as on/off; demonstrated comprehension of part/whole relationships; and had an inclusive vocabulary. (T. 344.) She noted the majority of Plaintiff's speech was difficult to understand. (*Id.*) She observed Plaintiff attempts to imitate correct sounds and although his ability to participate were limited, he was improving. (*Id.*) W.G. made satisfactory progress in his auditory discrimination and producing "target sound one word;" however, he did not make satisfactory progress in producing "target sound phrases" and producing "target sound conversation." (T. 342.) He made satisfactory progress to excellent progress in answering "wh" questions (who, what, where, why,

9

when); following directions; identifying/utilizing linguistic concepts; and, utilizing pronouns, noun, verbs and adjective. (T. 342.)

W.B.'s Individual Education Program ("EIP") report for school year 2012-2013 classified his disability as a speech or language impairment. (T. 243.) Testing indicated average scores in the Kaufman Test of Educational Achievement, 2nd Edition ("Kaufman Test"); however, W.G. scored in the 2nd percentile in the Goldman Fristoe Test of Articulation. (*Id.*) W.G. scored very low in the Clinical Evaluation of Language Fundamentals IV test, for example, W.G. scored in the 1st percentile in the area of "expressive language." (T. 244.)The EIP indicated that W.G.'s speech intelligibility was "fair" for single words and "poor" for spontaneous speech. (T. 245.) However, the EIP stated W.G. showed growth in reading and math between September and January. (T. 244, 245.) Overall, the EIP recommended language and speech services (T. 245) and a 12:1:1 classroom setting (T. 251.)

In determining W.G. had "less than marked" limitations in the acquiring and using information domain, the ALJ relied on teacher evaluations, medical opinion evidence and the IEP reports. Ms. Lahan's stated W.G. had no significant difficulty comprehending oral instructions, understanding school content and vocabulary, learning new material, and recalling and applying previously learned material. (T. 34.) The ALJ assigned Ms. Lahan's opinion "great weight." (T.32.) The ALJ relied on the opinions of State agency medical consultants, M. Marks, Psychology and D. Bostic, Pediatrics, whom he also afforded "great weight," that W.G. had "less than marked" limitations in this domain. (T. 33.)

Contrary to Plaintiff's assertion, the ALJ's decision included a discussion of the speech therapist's report of June 2011 (T. 32) and W.G.'s IQ score (T. 30). (Dkt. No. 11 at 20 [Pl.'s Mem. of Law].) The Regulations require an ALJ to consider a claimant's "test scores together with the other information [they] have about [claimant's] functioning, including reports of classroom performance and the observations of school personnel and others." 20 C.F.R. § 416.926a(e)(4)(ii). Here, the ALJ discussed W.G.'s testing scores in accordance with the regulations. (T. 32, 33, 34.) Further, he relied on the State medical examiners, who also relied on the IQ scores and test scores in assessing W.G.'s limitations. (T. 362.) The ALJ concluded that despite W.G.'s low score in articulation, overall testing only indicated a "moderate delay" in language skills. (T. 32-33.) Therefore, the ALJ's conclusion that W.G. had "less than marked" limitations in the domain of acquiring and using information is supported by substantial evidence including teacher and school evaluations, and medical evidence and testing scores.

**2.    Attending and Completing Tasks**

The ALJ determined Plaintiff had a "less than marked" limitation in the domain of attending and completing tasks. (T. 34-35.) Plaintiff argues the ALJ erred in his determination finding Plaintiff's speech and language delays did not cause a "marked" limitation in the domain of acquiring and using information. Plaintiff asserts the ALJ failed to take into consideration evidence of W.G.'s distractibility and difficulty transitioning. (Dkt. No. 11 at 16 [Pl.'s Mem. of Law].)

The domain of attending and completing tasks is focused principally on assessing the degree to which a child can "focus and maintain ... attention, and ... begin, carry through, and finish ... activities." 20 C.F.R. § 416.926a(h). According to the

Regulations, a normally functioning preschool-age child should be able to hold his attention in play and educational settings, dress himself, feed himself, put away his possessions, and refrain from interrupting others. *Id.* § 416.926a(h)(2)(iii). Evidence of limited functioning in the domain of attending and completing tasks includes being easily distracted by environmental stimuli, frequently interrupting others, and requiring substantial adult supervision. *Id.* § 416.926a(h)(3)(i)-(iii),(v).

The ALJ concluded W.G. had a "less than marked" limitation in attending and completing tasks based on Ms. Lahan's observations and the IEP report. (T. 35.)

Ms. Lahan did not report any "serious" or "very serious" problems in the domain of attending and completing tasks. (T. 133.) Ms. Lahan observed that W.G. had an "obvious" problem carrying out multi-step instructions on a daily basis and an "obvious" problem changing from one activity to another without being disruptive on a weekly basis. (*Id.*) She noted W.G. had a "slight" problem paying attention when spoken to directly (daily); focusing long enough to finish assigned activity or task (weekly); refocusing to task when necessary (daily); carrying out single-step instructions (weekly); and waiting to take turns (weekly). (*Id.*) She noted he had no problem sustaining attention during play activities. (*Id.*)

The IEP indicated W.G. "sometimes has difficulty staying on task and complying with directives;" however, he "has shown much growth . . . [and] is able to follow the classroom routine and is more easily redirected." (T. 246.) Therefore, the ALJ's conclusion that W.G. had "less than a marked" limitations in this area is supported by substantial evidence.

### 3. Interacting and Relating With Others

The ALJ determined W.G. had a "less than marked" limitation in interacting and relating with others. (T. 36.) Plaintiff argues the ALJ's determination in this area is not supported by substantial evidence. (Dkt. No. 11 at 18 [Pl.'s Mem. of Law].)

The domain of interacting and relating with others is focused principally on assessing the degree to which a child can "initiate and sustain emotional connections with others, develop and use the language of [his] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i). According to the Regulations, a normally functioning preschool-age child should be able to interact with peers and adults, foster friendships, and use relatively complex language. *Id.* § 416.926a(i)(2)(iii).

Ms. Lahan observed a "very serious problem" in W.G.'s ability to "relate[] experiences and tell[] stories" and in his ability to "use[] adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation." (T. 134.) She observed an "obvious problem" in his ability to use language appropriately to the situation and listener, and in his ability to introduce and maintain relevant and appropriate topics of conversation. However, W.G. had only a "slight problem" or "no problem" in playing cooperatively with other children; making and keeping friends; seeking attention appropriately; expressing anger appropriately; asking for permission appropriately; following rules; respecting/obeying adults in authority; taking turns in conversation; and interpreting meaning of facial expression, body language, hints and sarcasm. (*Id.*)

The IEP report stated W.G. "enjoy[ed] interacting with peer and adults," and was "willing to please . . . happy and pleasant and [could] be very helpful to teachers and peers." (T. 246.) Although W.G. had language delays, substantial evidence in the record supports the ALJ's conclusion that W.G. had a "less than marked" limitations in this area as he was able to interact and relate to others despite his language limitations.

### 4. Moving About and Manipulating Objects

The ALJ determined W.G. had a less than marked limitation in moving and manipulating objects. (T. 36.) Plaintiff argues the ALJ's determination in this area is not supported by substantial evidence. (Dkt. No. 11 at 16-17 [Pl.'s Mem. of Law].)

The domain of moving about and manipulating objects considers how well a child can move his body from "one place to another" and how a child "move[s] and manipulate[s] things." 20 C.F.R. § 416.926a(j). The Regulations state that a preschool-age child, "should be able to walk and run with ease. . . gross motor skills should let [him] climb stairs and playground equipment with little supervision, and let [him] play more independently. . . [his] fine motor skills should also be developing. . . [he] should be able to complete puzzles easily, string beads, and build with an assortment of blocks. . . [he] should be showing increasing control of crayons, markers, and small pieces in board games, and should be able to cut with scissors independently and manipulate buttons and other fasteners. *Id.* § 416.926a.

The ALJ concluded W.G. had a "less than marked" limitation in this area. The ALJ reasoned that although W.G. was recommended for occupational and physical therapy, he was able to dress himself, use utensils, walk independently, walk on his toes and jump. (T. 32.) The IEP report for school year 2012-2013 indicated W.G.'s

gross motor skills were below average. (T. 246.) Specifically, the report noted W.G.'s difficulties in his gross motor skills "affect [his] ability to adequately participate in school related gross motor activities with his classmates." (T. 246.) The record also indicated that W.G. struggles with forming upper and lower case letters, but can color and cut and print his name. (T. 265.) Further, although W.G.'s gross motor skills were below average, he was progressing. (*Id.*) An earlier IEP report indicated that W.G.'s gross motor skills were "below average," but he could run, dance, jump, climb, and propel a tricycle. (T. 189.) The report also stated he was independent with toileting, dressing and feeding. (*Id.*)

Ms. Lahan noted W.G. had no problem managing pace of physical activities or tasks, or showing a sense of body's location and movement in space. (T. 135.) She noted W.G. had a "slight problem" moving his body from one place to another; moving and manipulating things; demonstrating strength, coordination, dexterity in activities; integrating sensory input with motor output; and planning, remembering, executing controlled motor movements. (*Id.*) Therefore, although the record indicated that W.G. required physical and occupational therapy to assist him with his gross and fine manipulation, the record supports the ALJ's finding of a "less than marked" limitation in this area.

### 5. Caring for Yourself

The ALJ determined W.G. had a "less than marked" limitation in caring for yourself domain. (T. 37.) Plaintiff argues the ALJ's determination in this area is not supported by substantial evidence, specifically W.G.'s impairments with gross and fine motor skills impact his ability to care for himself. (Dkt. No. 11 at 17 [Pl.'s Mem. of Law].)

The domain caring for yourself contemplates a child's ability to "respond to changes in [his] emotions and the daily demands of [his] environment to help [himself] and cooperate with others in taking care of [his] personal needs, health and safety. It is characterized by a sense of independence and competence." 20 C.F.R. § 416.926a(k)(1)(i). The Regulations provide that a preschool-age child, "should want to take care of many of [his] physical needs by [himself] . . . and also want to try doing some things that [he] cannot do fully." *Id.* § 416.926a.

The ALJ determined that W.G. had less than marked limitations in this area as Plaintiff indicated W.G. is able to dress himself and Ms. Lahan indicated W.G. had no problem taking care of personal hygiene, caring for his physical needs (dressing, eating, etc.), and knowing when to ask for help. (T. 38.) Ms. Lahan did state W.G. had an "obvious problem" identifying and appropriately asserting emotional needs and responding appropriately to changes in own mood; however, she further stated that he was starting to use more "feelings" words. (T. 136.) Therefore, the ALJ's conclusion in this area is also supported by substantial evidence.

Plaintiff argues the ALJ failed to properly assess the effects of W.G.'s structured setting in his determination. (Dkt. No. 11 at 18 [Pl.'s Mem. of Law].) While the ALJ must consider how a child would function outside of a supportive setting, "[t]he regulation does not command the ALJ to explicitly discuss his consideration of these factors in the decision ...." *Watson ex rel. K.L.W. v. Astrue*, 07-CV-6417, 2008 WL 3200240, at *5 (W.D.N.Y. Aug. 5, 2008) *citing Turner v. Barnhart,* 2006 WL 2460876, *2 (E.D.Penn., August, 21, 2006)(remanding case to Commissioner on other grounds).

Although the ALJ did not explicitly discuss W.G.'s educational setting, the ALJ thoroughly discussed W.G.'s IEP reports, preschool developmental evaluation, teacher evaluations, physical therapy evaluations, and medical evidence in the record. The ALJ also discussed in detail testimony from Plaintiff concerning W.G.'s functioning outside the school setting. As the ALJ's decision was supported by substantial evidence, failure to specifically discuss the effects of W.G.'s structured educational setting is not in error.

Plaintiff argues the ALJ failed to properly consider Plaintiff's testimony regarding the severity of W.G.'s impairments. (Dkt. No. 11 at 21 [Pl.'s Mem. of Law].) The ALJ properly assessed the credibility of the father. The ALJ determined that W.G.'s medically determinable impairments "could reasonably be expected to produce the alleged symptoms; however, the statements concerning the intensity, persistence and limiting effects of these symptoms are not credible . . . for the reasons explained below." (T. 32.) The ALJ discussed Plaintiff's testimony throughout his decision, and specifically within each domain. The ALJ discussed in detail the medical evidence, educational testing and evaluations, and other relevant information in the record as it related to Plaintiff's testimony. (T. 32.) Therefore, the ALJ did not err in his credibility assessment of W.G.'s father.

Therefore, the ALJ's conclusion that W.G. had "less than marked" limitations in each domain is supported by substantial evidence and the ALJ properly evaluated the evidence in the record as well as Plaintiff's testimony.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:     June 25, 2015
              Syracuse, NY

Glenn T. Suddaby
U.S. District Judge